## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                            No. CR 10-0456 JB

DARNELL BEGAYE,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant's Motion to Withdraw Plea of Guilty, filed August 30, 2011 (Doc. 58)("Motion"). The Court held a hearing on November 7, 2011. The primary issue is whether the Court should allow Defendant Darnell Begaye to withdraw his plea of guilty. Because D. Begaye has not presented a fair and just reason for requesting the withdrawal of his guilty plea, the Court will deny his Motion.

## FACTUAL BACKGROUND

The allegations in this case are largely undisputed. D. Begaye and co-Defendant Tyrus Begaye were at D. Begaye's home the night of February 5, 2010. See Affidavit of William A. Hall ¶ 6, at 3 (executed February 9, 2010), filed February 9, 2010 (Doc. 1)("Hall Aff."). T. Begaye went outside around midnight and heard a voice yelling "fuck you" at him. Hall Aff. ¶ 6, at 3. T. Begaye saw a shadow and advanced on the shadow. See Hall Aff. ¶ 6, at 3. T. Begaye "stated he felt he had to rush the shadow and that he began hitting him, over and over." Hall Aff. ¶ 6, at 3. T. Begaye "stated he thought he saw something in his hand and grabbed his arm, all the while hitting him with his fist." Hall Aff. ¶ 6, at 3. Investigators found no weapons at the crime scene. See Hall Aff. ¶ 6,

at 3.  While T. Begaye was hitting the victim, Payton Hogue, D. Begaye "ran up to help subdue the victim."  Hall Aff. ¶ 7, at 3.  D. Begaye and T. Begaye held Hogue's arms, yelling at him and asking who he was.  See Hall Aff. ¶ 7, at 3-4.  When Hogue would not answer them, they began to hit him more.  See Hall Aff. ¶ 7, at 4.  Hogue eventually gave them his name.  See Hall Aff. ¶ 7, at 4.  D. Begaye stated that he attempted to pull T. Begaye off Hogue when the victim gave his name, because he knew Hogue and that he lived nearby.  See Hall Aff. ¶ 9, at 5.  T. Begaye believed that the "victim's face was painted white and that he kept growling while they beat him."  See Hall Aff. ¶ 7, at 4.  They continued to beat him, attempting to make Hogue confess he was a witch.  See Hall Aff. ¶ 7, at 4.  D. Begaye stated that he hit Hogue a few times with his fists.  See Hall Aff. ¶ 9, at 5.  Hogue died from the incident.  See Hall Aff. ¶ 10, at 5.

## PROCEDURAL BACKGROUND

D. Begaye, pursuant to a Plea Agreement, filed April 7, 2011 (Doc. 46), pled guilty to the Indictment, filed February 23, 2010 (Doc. 15), charging him with a violation of 18 U.S.C. § 1153, 1111, and 2, that being second-degree murder and aiding and abetting.  D. Begaye represented that he understood his right to be represented by an attorney and that he had representation of counsel in entering into the guilty plea.  See Plea Agreement ¶ 1, at 1.  He represented that he understood his rights: (i) "to plead not guilty, or having already so pleaded, to persist in that plea"; (ii) "to have a trial by jury"; (iii) "to confront and cross-examine adverse witnesses" at trial; (iv) "to be protected from compelled self-incrimination" at trial; (v) "to testify and present evidence on [his] behalf" at trial; and (vi) "to compel the attendance of witnesses for the defense."  Plea Agreement ¶ 2, at 1-2.  D. Begaye agreed to waive these rights.  See Plea Agreement ¶ 3, at 2.  The Plea Agreement stipulates to a sentencing range of "151 to 188 months."  Plea Agreement ¶ 5, at 2-3.  D. Begaye agreed to a sentence in this range, and further stipulated that he would not seek a downward

departure or variance beyond this range.  See Plea Agreement ¶ 10, at 5.  D. Begaye stipulated that

the Plea Agreement was "a complete statement of the agreement in this case and may not be altered

unless done so in writing and signed by all parties."  Plea Agreement ¶ 19, at 8.[1]

D. Begaye entered his guilty plea on April 7, 2011, before the Honorable Robert H. Scott,

United States Magistrate Judge for the United States District Court for the District of New Mexico.

Before accepting the guilty plea, Judge Scott informed D. Begaye that he was under oath and that

any false statements he made could be used in a perjury prosecution.  See Transcript of Hearing at

3:18-22 (taken April 7, 2011)(Judge Scott)("Apr. 7, 2011 Tr.").  Judge Scott informed D. Begaye

that he had the right to plead not guilty, the right to a trial before a jury, and the right to be

represented by counsel.  See Apr. 7, 2011 Tr. at 3:23-4:1 (Judge Scott).  Judge Scott told D. Begaye

that an attorney would be appointed for him at every stage of the proceeding if he could not afford

one.  See Apr. 7, 2011 Tr. at 4:1-3 (Judge Scott).  Judge Scott related to D. Begaye that he had the

right: (i) "to confront and cross examine any adverse witness" at trial; (ii) "to be protected from any

compelled self incrimination"; (iii) "to testify at the trial and to present evidence"; and (iv) "to

compel the attendance of witnesses who would testify on [his] behalf."  Apr. 7, 2011 Tr. at 4:4-9

(Judge Scott).  Judge Scott informed D. Begaye that, "[i]f the Court accepts [his] pleas of guilty, [he]

will be deemed to have waived all of these trial rights."  Apr. 7, 2011 Tr. at 4:10-11 (Judge Scott).

D. Begaye testified that he was not presently under the influence of any medicines, drugs, or alcohol.

See Apr. 7, 2011 Tr. at 5:19-21 (Judge Scott, D. Begaye).  D. Begaye stated that he has not recently

been treated for any mental illness or addiction to drugs or alcohol.  See Apr. 7, 2011 Tr. at 5:22-24

---

[1]It is worth noting that T. Begaye also pled guilty and received the same agreed upon sentencing range.  See Plea Agreement ¶ 5, at 2-3, filed April 7, 2011 (Doc. 44).  Thus, there was no disparity between the agreed upon sentencing ranges D. Begaye and T. Begaye received.  The Court sentenced T. Begaye to 151-months imprisonment.

(Judge Scott, D. Begaye).   D. Begaye asserted that he had sufficient time to consult with his attorney, Todd E. Farkas, about the nature of the charges and that he was satisfied with the representation Mr. Farkas had given him.   See Apr. 7, 2011 Tr. at 5:6-11 (Judge Scott, D. Begaye).

D. Begaye then consented to pleading guilty before a United States Magistrate Judge and recognized that his signature appeared on the form consenting to a plea before a magistrate judge. See Apr. 7, 2011 Tr. at 7:21-8:3 (Judge Scott, D. Begaye); Consent to Appear Before United States Magistrate Judge in a Felony Case at 1, filed April 7, 2011 (Doc. 45).   D. Begaye said that the signature on the Plea Agreement is his signature.   See Apr. 7, 2011 Tr. at 8:6-9 (Judge Scott, D. Begaye).   D. Begaye represented that he had enough time to read and review the Plea Agreement with his attorney before he signed it.   See Apr. 7, 2011 Tr. at 8:10-12 (Judge Scott, D. Begaye).   D. Begaye told Judge Scott that he understood the Plea Agreement's terms.   See Apr. 7, 2011 Tr. at 8:13-15 (Judge Scott, D. Begaye).   D. Begaye represented that no one had threatened or coerced him into pleading guilty.   See Apr. 7, 2011 Tr. at 8:16-18 (Judge Scott, D. Begaye).   D. Begaye stated that no other promises had been made to him other than those in the Plea Agreement.   See Apr. 7, 2011 Tr. at 8:19-21 (Judge Scott, D. Begaye).   D. Begaye testified that he was pleading guilty voluntarily and because he is guilty.   See Apr. 7, 2011 Tr. at 8:22-24 (Judge Scott, D. Begaye). Judge Scott then explained the maximum term of imprisonment, maximum fine, and mandatory term of supervised release a court could impose if D. Begaye pled guilty.   See Apr. 7, 2011 Tr. at 9:10-18 (Judge Scott). D. Begaye stated that he understood the maximum penalty a court could impose.   See Apr. 7, 2011 Tr. at 9:22-24 (Judge Scott, D. Begaye).   D. Begaye told Judge Scott that he understood the stipulations regarding his sentence into which he had entered were not binding on the sentencing judge.   See Apr. 7, 2011 Tr. at 9:25-10:11 (Judge Scott, T. Begaye, D. Begaye).   D. Begaye said that he understood he was waiving certain appellate rights under his Plea Agreement and that he had

spoken with his attorney regarding this matter.  <u>See</u> Apr. 7, 2011 Tr. at 10:19-11:8 (Judge Scott, T. Begaye, D. Begaye).  D. Begaye testified that he understood that it is the Court's obligation to calculate the applicable sentencing guideline range, to consider the range, and then consider possible departures from that range as well as other sentencing factors.  <u>See</u> Apr. 7, 2011 Tr. at 11:10-7 (Judge Scott, T. Begaye, D. Begaye).  D. Begaye agreed that all of the admitted facts in his Plea Agreement are true.  <u>See</u> Apr. 7, 2011 Tr. at 12:9-11 (Judge Scott, D. Begaye).  D. Begaye then pled guilty to the charges against him.  <u>See</u> Apr. 7, 2011 Tr. at 12:25-13:6 (Judge Scott, D. Begaye). Judge Scott then found that D. Begaye was competent to enter an informed plea, that he was aware of the nature of the charges and the consequences of the plea, that the plea was knowing and voluntary, and that the plea was supported by independent evidence of the elements of the offenses charged.  <u>See</u> Apr. 7, 2011 Tr. at 13:7-13 (Judge Scott).  Judge Scott then accepted the guilty plea. <u>See</u> Apr. 7, 2011 Tr. at 13:14-17 (Judge Scott).

D. Begaye filed his Motion on August 30, 2011.  He requests that the Court allow him to withdraw his plea of guilty.  <u>See</u> Motion at 1.  He asserts that the seven factors courts use to determine whether to permit a withdrawal of a guilty plea weigh in favor of withdrawal.  <u>See</u> Motion at 1, 5.  He "asserts his innocence as to second degree murder" based on "a defense of Self-defense." Motion at 2. D. Begaye contends that someone sent him "an anonymous letter" several months after he turned himself in.  Motion at 2.  He contends that the person who sent the letter related that he or she was planning to buy some marijuana from Hogue and Hogue's brother, "but ended up drinking with them on the evening of the incident."  Motion at 3.  He contends that the person who sent the letter observed Hogue "beat up his wife and another individual, then walk off into the night." Motion at 3.  He asserts that the person who wrote the letter observed the altercation on the night the crime occurred.  <u>See</u> Motion at 3.  D. Begaye contends that the person who wrote the letter

saw D. Begaye and T. Begaye leave, and then observed "somebody else come . . . from behind the house and start hitting Payton with something."  Motion at 3.  D. Begaye asserts that his investigator discovered information that the victim and the victim's brother had been planning an attack on him the night the crime occurred, and had visited the home the night before the attack.  See Motion at 2-4.  D. Begaye argues that, under the circumstances, he and T. Begaye had no option but to defend themselves.  See Motion at 4.  As to the second factor, D. Begaye contends that "[t]here appears to be no prejudice to the government as the government will have the same opportunity to present the same evidence that has always been available."  Motion at 4.  He argues that the third factor weighs in favor, because he has not delayed in bringing this Motion.  See Motion at 4.  Regarding the fourth factor, D. Begaye concedes that there will always be some inconvenience to the Court when a defendant withdraws his guilty plea.  See Motion at 4.  As to the fifth factor, D. Begaye acknowledges that counsel has represented him throughout the proceedings.  See Motion at 4.  He states that, before entering the Plea Agreement, his "counsel advised [him] that he could face between 235 and 293 months" under the sentencing guidelines.  Motion at 4-5.  He notes that the guilty plea limits the sentencing range to 151 to 188 months.  See Motion at 5.  With respect to the sixth factor, he concedes that his guilty plea was knowing and voluntary.  See Motion at 5 ("The Court is also to consider whether the plea is knowing and voluntary.  In this case, the court proceeded through an extensive plea colloquy with the defendant.").  He argues that the seventh factor weighs in his favor, because "exercising his right to trial would not result in a waste of judicial resources" based on the "fair and just reasons" he has provided "for the withdrawal of his plea."  Motion at 5.

On September 13, 2011, Plaintiff United States of America filed its Response to Defendant's Motion to Withdraw Guilty Plea.  See Doc. 60 ("Response").  The United States opposes D.

Begaye's Motion to withdraw his guilty plea.  <u>See</u> Response at 1.  The United States recounts the procedural history of D. Begaye's guilty plea.  <u>See</u> Response at 5.  As to D. Begaye's assertion of innocence, the United States contends that he has more than an obligation to assert a legal defense, as he must assert a credible claim of legal innocence.  <u>See</u> Response at 7.  The United States contends that D. Begaye's assertion of innocence is "merely self serving," and is not "reasonable or credible."  Response at 7.  The United States asserts that D. Begaye admitted that he "jumped in the fight with his cousin, Tyrus, who was already beating Peyton Hogue on the ground."  Response at 7.  Additionally, the United States argues that D. Begaye has never up until this point asserted the defense of self-defense or informed investigators that he acted in self defense.  <u>See</u> Response at 7-8. The United States also questions the validity of D. Begaye's story that "an unknown third party who purportedly witnessed the beating . . . would allegedly provide evidence to exculpate Begay."  Response at 8.  The United States notes that "investigators never found evidence of other parties being present, via foot prints, witness identifications or other statements from either of the co-defendants."  Response at 8.  It asserts that "this information appears to be nothing more than a new defense theory that Begay had not raised until this stage of the proceedings."  Response at 8.  As to the second factor regarding prejudice to the government, the United States notes that it "has provided the defendant with 131 pages of discovery and began the initial stages of trial preparation, including meetings with the case agent, extensive review of the investigative reports, and identification of lay and expert witnesses."  Response at 8.  The United States asserts that its trial preparations ceased once it learned D. Begaye would plead guilty, and that its case agent will now need to track down witnesses for the United States to prepare them for trial.  <u>See</u> Response at 8.  The United States contends that the case agent may need to locate additional information, and the Federal Bureau of Investigation's ("FBI") laboratory may need to perform forensic tests.  <u>See</u> Response at

-7-

9.  The United States also argues that it will be difficult for the family to have to "re-open a painful chapter" in their lives.  Response at 9.  As to the third factor, the United States concedes that the three-and-a-half-month delay in D. Begaye filing his Motion is "not extraordinary," but reiterates the lack of credibility underlying his "new evidence."  Response at 9.  As to the fourth and seventh factors, the United States argues that granting the Motion "would surely disrupt the Court's business and possibly delay the prosecution of other cases on the docket."  Response at 10.  The United States also notes that the parties have already stipulated to a sentencing range as part of their Plea Agreement.  See Response at 10.  The United States contends that the fifth factor weighs against granting the Motion, because "[t]here is simply no evidence of ineffective assistance of counsel," and that "[t]o the contrary, Begay has been ably represented throughout this prosecution."  Response at 10.  The United States notes that the plea colloquy indicates that D. Begaye had adequate assistance from his attorney.  See Response at 10-11.  The United States asserts that the sixth factor weighs against granting the Motion, as all the evidence indicates that the plea was knowing and voluntary.  See Response at 1.

At the hearing on November 7, 2011, D. Begaye emphasized that he had previously related to officers that he was fearful for his safety during the altercation and that he believed he was defending himself.  See Transcript of Hearing at 5:6-7:25 (taken November 7, 2011)(Farkas)("Nov. 7, 2011 Tr.").[2]  The Court then questioned what basis it had, assuming D. Begaye was aware of a potential defense of self defense before he pled guilty, to permit him to withdraw his guilty plea.  See Nov. 7, 2011 Tr. at 8:1-5 (Court).  D. Begaye then took the stand and testified.  See Nov. 7, 2011 Tr. at 8:6-21 (Farkas, Court, Wild, D. Begaye).  D. Begaye testified that this case was the first

_____

[2]The Court's citations to the transcript of the hearing refers to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

-8-

time he has faced felony charges and that he was unaware of the criminal justice process.  See Nov. 7, 2011 Tr. at 9:14-17 (D. Begaye).  He asserted that he never received an evidentiary hearing or a suppression hearing.  See Nov. 7, 2011 Tr. at 9:18-19 (D. Begaye).  He stated that he does not believe the evidence supports a charge of second-degree murder.  See Nov. 7, 2011 Tr. at 9:19-22 (D. Begaye).  He testified that he wants a fair hearing.  See Nov. 7, 2011 Tr. 9:23-24 (D. Begaye). D. Begaye said that he felt coerced and pressured to enter the guilty plea based on the potential sentence he faced.  See Nov. 7, 2011 Tr. at 10:1-4 (D. Begaye).  When asked what evidence he believed should be suppressed, D. Begaye stated that there was some evidence that did not make it onto the police's evidence list from the crime scene, such as some footprints that were present at the scene and a pair of gloves at the scene.  See Nov. 7, 2011 Tr. at 10:8-17 (Farkas, D. Begaye).  D. Begaye also stated that there were some inaccuracies in one of the police reports regarding how Hogue came onto the property where the altercation occurred.  See Nov. 7, 2011 Tr. at 10:19-11:5 (D. Begaye).

D. Begaye said that he did not understand that he needed to raise the issue of self defense during the plea bargain and in the proceedings, because he mentioned that information in his interview with the FBI.  See Nov. 7, 2011 Tr. at 11:8-15 (D. Begaye).  D. Begaye asserted that Mr. Farkas had represented him throughout the proceedings, but noted that he probably did not provide effective assistance of counsel.  See Nov. 7, 2011 Tr. at 13:2-8 (Ortega, D. Begaye).  D. Begaye testified that Mr. Farkas had informed him of everything happening in the case.  See Nov. 7, 2011 Tr. at 13:11-13 (Ortega, T. Begaye).  D. Begaye acknowledged that he had some discussions with Mr. Farkas regarding the evidence against him in the case, such as the police reports generated after the crime occurred.  See Nov. 7, 2011 Tr. at 13:14-14:3 (Ortega, D. Begaye).  D. Begaye said he had a chance to look at the autopsy report generated for Hogue, but noted that, based on his lack of

medical training, he did not really understand the report.  See Nov. 7, 2011 Tr. at 14:4-9 (Ortega,

D. Begaye). D. Begaye stated that he had received only three photographs of the crime scene.  See

Nov. 7, 2011 Tr. at 14:14-17 (Ortega, D. Begaye).  He testified that he had received the transcript

of his video and audio statement to one of the case agents, but stated that he had not looked at the

recording.  See Nov. 7, 2011 Tr. at 14:18-25 (Ortega, D. Begaye).  He said that he had met with Mr.

Farkas three or four times before entering a guilty plea, and that each of those sessions lasted around

an hour.  See Nov. 7, 2011 Tr. at 15:1-16 (Ortega, D. Begaye).  He asserted that those meetings

included discussions of the charges and his options in facing those charges, such as proceeding to

trial to contest the charges or enter into a plea agreement.  See Nov. 7, 2011 Tr. at 15:17-16:1

(Ortega, D. Begaye).  He acknowledged that he agreed to enter into a guilty plea based on those

meetings.  See Nov. 7, 2011 Tr. at 16:2-4 (Ortega, D. Begaye).  He said that the pressure and

coercion he faced was the length of the potential sentence.  See Nov. 7, 2011 Tr. at 16:5-10 (Ortega,

D. Begaye).  He stated that his attorney made it seem like his chances of successfully contesting the

charges were low.  See Nov. 7, 2011 Tr. at 16:14-16 (Ortega, D. Begaye).  D. Begaye testified that

he believes that the agreed upon sentencing range in his Plea Agreement is higher than it should be

based on the minimal role he played in the crime.  See Nov. 7, 2011 Tr. at 16:21-25 (Ortega, D.

Begaye).

When discussing the circumstances of the offense, he stated that he did not know whether

there were any other persons besides T. Begaye and Hogue at the scene of the crime during the

commission of the offense.  See Nov. 7, 2011 Tr. at 17:15-18 (Ortega, D. Begaye).  He

acknowledged that, other than during his altercation with Hogue, no one else attacked him that night.

See Nov. 7, 2011 Tr. at 17:19-21 (Ortega, D. Begaye).  He stated that he told the investigating

officer that there was no one else at the crime scene other than himself, T. Begaye, and Hogue.  See

Nov. 7, 2011 Tr. at 18:13-15 (Ortega, D. Begaye).  D. Begaye never saw Hogue in possession of any weapons and never received any blows from weapons, but noted that Hogue had a dog that he tried to have attack D. Begaye and T. Begaye.  See Nov. 7, 2011 Tr. at 18:16-19:2 (Ortega, D. Begaye). D. Begaye stated that his role in the altercation was pulling T. Begaye off Hogue several times, restraining Hogue, and hitting Hogue twice.  See Nov. 7, 2011 Tr. at 19:3-14 (Ortega, D. Begaye). D. Begaye acknowledged that he had almost no injuries after the altercation.  See Nov. 7, 2011 Tr. at 19:24-20:7 (Ortega, D. Begaye).  D. Begaye testified that he did not tell the investigating officers any information about the alleged threats Hogue had made regarding D. Begaye, as a private investigator only recently uncovered that information.  See Nov. 7, 2011 Tr. at 20:14-21:12 (Ortega, D. Begaye).  D. Begaye stated that he was unsure whether some of the footprints at the crime scene which he noticed were from others visiting the crime scene following the altercation or as part of the criminal investigation.  See Nov. 7, 2011 Tr. at 22:9-16 (Ortega, D. Begaye).

The Court asked Mr. Farkas what information D. Begaye now has in his possession that he did not have when he entered the guilty plea which would have affected his decision to enter a guilty plea.  See Nov. 7, 2011 Tr. at 23:15-19 (Court).  Mr. Farkas said he could not think of any pertinent information that D. Begaye did not have at the time he entered his guilty plea.  See Nov. 7, 2011 Tr. at 23:20-21 (Farkas).  The Court commented that its experience has been that, when there was a sound colloquy when the defendant entered his guilty plea and the defendant understood the nature of the guilty plea, most defendants who withdraw from their guilty pleas ultimately receive undesirable results in terms of their results at trial and their sentence.  See Nov. 7, 2011 Tr. 24:4-18 (Court). The United States asserted that D. Begaye's subjective belief as to the likelihood of success of a legal defense is not sufficient to permit him to withdraw a guilty plea and that the asserted defense must be credible to permit withdrawal of a guilty plea.  See Nov. 7, 2011 Tr. at 25:8-14

(Ortega).  The United States contended that, even if D. Begaye asserted this defense, it could prove

that the amount of force D. Begaye and T. Begaye used exceeded what is permissible under the

doctrine of self defense.  See Nov. 7, 2011 Tr. at 26:7-10 (Ortega).  The United States noted that any

threat to D. Begaye that Hogue had made to others was not known to D. Begaye at the time of the

incident and would not support a self-defense theory.  See Nov. 7, 2011 Tr. at 27:5-17 (Ortega).  The

United States asserted that Mr. Farkas is an experienced criminal defense attorney who has practiced

for many years.  See Nov. 7, 2011 Tr. at 30:7-11 (Ortega).  The United States also argued that there

are no defects in the plea colloquy with Judge Scott.  See Nov. 7, 2011 Tr. at 30:12-22 (Ortega).

Following the hearing, on November 22, 2011, D. Begaye submitted a letter to the Court.

See Letter to the Court from Darnell Begaye (dated November 18, 2011), filed November 22, 2011

(Doc. 69)("Letter").  He relates that his attorney failed to give a report to the prosecutor, which

discusses "the victim Payton Hogue, talking about coming to [his] house the night prior to the

incident" and the victim's brother telling the victim "to leave [D. Begaye] alone."  Letter at 1.  D.

Begaye asserts that, "if [his] attorney had given this report to the prosecutor, [his] case would've

been different."  Letter at 1.  D. Begaye attached the report to the letter.

## LAW REGARDING WITHDRAWAL OF GUILTY PLEAS

Rule 11(d)(2)(B) of the Federal Rules of Criminal Procedure governs a motion to withdraw

a guilty plea before the imposition of a sentence.  Rule 11(d)(2)(B) provides that a defendant may

withdraw a plea if "the defendant can show a fair and just reason for requesting the withdrawal."

Fed. R. Crim. P. 11(d)(2)(B).  Defendants do not have an absolute right to withdraw a guilty plea.

See United States v. Siedlik, 231 F.3d 744, 748 (10th Cir. 2000).  District courts, however, have

broad discretion in determining whether to grant  motions to withdraw  pleas.  See United States v.

Wright, 392 F.App'x 623, 627 (10th Cir. 2010)(unpublished)("We review the district court's denial

of a motion to withdraw a guilty plea for an abuse of discretion."); United States v. Garcia, 577 F.3d 1271, 1274 (10th Cir. 2009)("Although a motion to withdraw a plea prior to sentencing should be freely allowed, we will not reverse unless the defendant can show that the court acted unjustly or unfairly.").  The Tenth Circuit has repeatedly held that, when a defendant moves to withdraw a guilty plea before sentencing, the court must assess whether there is a fair and just reason for withdrawal based on the following factors:

> (1) whether the defendant has asserted his innocence; (2) whether withdrawal would prejudice the government; (3) whether the defendant delayed in filing his motion, and, if so, the reason for the delay; (4) whether withdrawal would substantially inconvenience the court; (5) whether close assistance of counsel was available to the defendant; (6) whether the plea was knowing and voluntary; and (7) whether the withdrawal would waste judicial resources.

United States v. Yazzie, 407 F.3d 1139, 1142 (10th Cir. 2005).  The defendant bears the burden of demonstrating a "fair and just reason" for withdrawal of the plea.  United States v. Griffin, 191 F.App'x 699, 701 (10th Cir. 2006)(unpublished).  In assessing a motion to withdraw a guilty plea, courts should give particular weight to knowing and voluntary statements that the defendant made under oath at the plea hearing.  See United States v. Messino, 55 F.3d 1241, 1248 (7th Cir. 1995).  In reaching their decisions, courts should also remember that "[t]he plea of guilty is a solemn act not to be disregarded because of belated misgivings about [its] wisdom."  United States v. Morrison, 967 F.2d 264, 268 (8th Cir. 1992).  While the right to withdraw a guilty plea before sentencing, therefore, is not absolute, the court should allow relief when the defendant can show a fair and just reason for withdrawal.  See United States v. Jim, No. 10-2653, 2011 WL 6013093, at *6-7 (D.N.M. Nov. 22, 2011)(Browning, J.).

## ANALYSIS

The Court will deny D. Begaye's Motion to withdraw his guilty plea.  The Court does not

believe that D. Begaye has met his burden to demonstrate that there is a fair and just reason for withdrawal of his guilty plea.  There are few, if any, new facts available to D. Begaye now that were not available at the time of his guilty plea.  The Court does not find his self-defense theory credible given the circumstances of his case.  Furthermore, the Court cannot reasonably rely on an anonymous letter sent to D. Begaye after the crime occurred which he has not produced as evidence.  The Court does not believe that the seven factors courts consider to determine whether to permit withdrawal of a guilty plea weigh in favor of withdrawal.

The first factor regarding whether the defendant has asserted his innocence weighs against withdrawal.  To satisfy the first factor based on an assertion of legal innocence, the Tenth Circuit has held that a defendant must present a "credible claim of legal innocence," United States v. Hamilton, 510 F.3d 1209, 1214 (10th Cir. 2007), and that a "defendant's subjective belief in his own innocence does not mandate allowing him to withdraw his plea of guilty," United States v. Hickok, 907 F.2d 983, 985 n.2 (10th Cir. 1990).[3]  This factor means that a defendant must "make a factual argument that supports a legally cognizable defense." United States v. Hamilton, 510 F.3d at 1214. D. Begaye's argument that an unidentified person saw someone beat Hogue after D. Begaye and T. Begaye left the crime scene is largely implausible as a factual matter.  D. Begaye himself admitted at the hearing that he did not see anyone else there the night the crime occurred.  See Nov. 7, 2011 Tr. at 17:19-21 (Ortega, D. Begaye).  D. Begaye relies on an anonymous letter he received relating that an unidentified person observed the events and can provide evidence to help support him at trial.

---

[3]Establishing a credible claim of innocence is one of the seven factors that the Court considers under United States v. Yazzie and is not a prerequisite to permitting withdrawal of the plea.  See United States v. Cervantes, 115 F.App'x 1, 9 (10th Cir. 2004)(unpublished)(relying on a decision from the United States Court of Appeals for the District of Columbia Circuit, which states "whether the movant has asserted his legal innocence is an important factor to be weighed"(citing United States v. Barker, 514 F.2d 208, 221-22 (D.C. Cir. 1975)).

Putting aside the problems of relying on an anonymous letter, D. Begaye has not produced this letter for the Court to assess whether such a letter exists. The prospects of locating this anonymous person are also uncertain. To support the presence of additional persons, D. Begaye asserts that there are additional footprints in a picture of the crime scene beyond those the police noted. D. Begaye has not presented this picture to the Court for it to determine the plausibility of his assertions. Likewise, there are a variety of other plausible explanations for any additional footprints at the scene, such as the investigating officers leaving footprints at the scene. It is also possible that the jury might believe that, even if there was an additional person who attacked Hogue, Hogue was already dead when D. Begaye and T. Begaye left the scene of the crime. Based on these facts, the Court cannot soundly and reasonably conclude that D. Begaye has presented a "credible claim of legal innocence." United States v. Hamilton, 510 F.3d at 1214.

Additionally, D. Begaye's argument regarding several facts that recently became known to him, that the victim may have visited D. Begaye's home the night before the crime occurred and that the victim had made a threat to harm D. Begaye before the incident occurred, is unavailing. By D. Begaye's own admission, he only recently learned of this information. See Motion at 3. While some of that information might be helpful to D. Begaye, the Court finds it difficult to see how information of which D. Begaye was not aware until months after the altercation would support in a significant way a self-defense argument. As the Supreme Court of the United States recognized long ago, one of the key questions in self-defense cases is whether "a man reasonably believes that he is in immediate danger of death or grievous bodily harm from his assailant." Brown v. United States, 256 U.S. 335, 343 (1921). Facts unknown to D. Begaye at the time he acted to defend himself would not factor into the question of whether his belief was reasonable. See Brown v. United States, 256 U.S. at 343. As Professor Wayne LaFave has discussed, the requirement of a

-15-

reasonable belief "is an objective requirement" that looks at the reasonable belief of the defendant under the circumstances as presented to the defendant.  See 2 Wayne R. LaFave, Substantive Criminal Law § 10.4(c), at 147-48 (2d ed. 2003).[4]  The United States Court of Appeals for the Tenth Circuit's pattern jury instructions similarly provide: "A person may use force which is intended or likely to cause death or great bodily harm only if he reasonably believes that force is necessary to prevent death or great bodily harm to [himself] [another]."   See Tenth Circuit Pattern Jury Instructions Criminal § 1.28, at 45 (2011).  As further illustration that self defense relies heavily on the facts known to the defendant as opposed to those unknown to him, a defendant's belief may be mistaken yet still be reasonable if the belief was reasonable under the circumstances.  See Brown v. United States, 256 U.S. at 343 ("Detached reflection cannot be demanded in the presence of an uplifted knife."); LaFave, supra, § 10.4(c), at 148 ("When his belief is reasonable, however, he may be mistaken in his belief and still have the defense.").

Likewise, as the United States has argued, even if D. Begaye was justified in using some level of force, the defense of self defense requires that the amount of force be reasonable under the circumstances.  See Beard v. United States, 158 U.S. 550, 560 (1895).  As the Supreme Court articulated in 1895:

> [T]he question for the jury was whether, without fleeing from his adversary, he had, at the moment he struck the deceased, reasonable grounds to believe, and in good faith believed, that he could not save his life or protect himself from great bodily harm except by doing what he did, namely, strike the deceased with his gun, and thus prevent his further advance upon him.

Beard v. United States, 158 U.S. at 560 (emphasis added).  Accord Tenth Circuit Pattern Jury

---

[4]When discussing self defense, the United States Court of Appeals for the Tenth Circuit has cited Professor LaFave's Substantive Criminal Law treatise as authoritative.  See Hogan v. Gibson, 197 F.3d 1297, 1304 (10th Cir. 1999)(citing 2 Wayne R. LaFave & Austin W. Scott, Jr., Substantive Criminal Law § 7.11(a), at 271 (1986)).

Instructions Criminal § 1.28, at 45 (stating that self-defense is not a proper theory for acquittal when "it was not reasonable for the defendant to think that the force he used was necessary to defend [himself] [another person] against an immediate threat"); LaFave, supra, § 10.4(b), at 145-47 ("In determining how much force one may use in self-defense, the law recognizes that the amount of force which he may justifiably use must be reasonably related to the threatened harm which he seeks to avoid."). T. Begaye and D. Begaye beat Hogue until he died, and restrained him for a lengthy period of time after which he no longer likely posed a threat to them, which gives the United States a strong argument that the amount of force they used was unreasonable. Thus, it would be difficult for D. Begaye to successfully assert this defense at trial. The first factor weighs against allowing him to withdraw his guilty plea.

The second factor regarding prejudice to the government weighs somewhat against withdrawal of the guilty plea. The United States has represented that it has done some preliminary trial preparation for this case, but has not fully developed its case for trial. The United States has asserted that it will have a difficult time tracking down and preparing witnesses for trial, a circumstance which weighs against withdrawal. See United States v. Jones, 168 F.3d 1217, 1220 (10th Cir. 1999)(finding that allowing the defendant to withdraw his plea "could also prejudice the government," because the "government will face the presumably difficult task of locating confidential informants"). The United States has represented that further forensic testing may be necessary in this case and that it may need to acquire additional evidence. The United States has also argued that it will be painful for Hogue's family to have to deal with these issues again. The circumstances of this case, while not simple, are in the Court's view not such that preparation for trial would be unduly burdensome for the United States. The United States has identified some prejudice it will face, however. Thus, this factor weighs somewhat against withdrawal.

The third factor regarding whether the defendant delayed in seeking withdrawal of the guilty plea weighs in favor of withdrawal. The United States has conceded that the three-and-a-half month period between the guilty plea and the filing of the Motion seeking withdrawal of the guilty plea is not particularly lengthy. The Court does not believe that this period of time is so long as to support a finding of delay. See United States v. Kramer, 168 F.3d 1196, 1202 (10th Cir. 1999)(recognizing that an eight-month delay and a motion to withdraw a guilty plea filed on "the eve of sentencing" constituted delay). Thus, this factor weighs in favor of withdrawal.

Looking at the fourth and seventh factors, whether withdrawal would substantially inconvenience the Court or waste judicial resources, the Court notes that there will almost always be some inconvenience or resource allocation when a case that has settled goes to trial. In previous cases, the Court has recognized that the gravity of the defendant's circumstances in a given case influences whether "the withdrawal of his plea, with all that it implies, would substantially inconvenience the Court of waste judicial resources." United States v. Gould, No. 03-2274, 2006 WL 4061159, at *3 (D.N.M. Sept. 23, 2006)(Browning, J.). Second-degree murder cases can be somewhat lengthy, can involve complex forensic evidence, and many witnesses. See United States v. Carr, 80 F.3d 413, 421 (10th Cir. 1996).[5] Additionally, because the prospects of D. Begaye's self-defense theory are weak, the Court believes there is more inconvenience to the Court and a larger waste of judicial resources than in a typical case, particularly given the busy criminal docket in this district. While treated sometimes as an eighth factor, a district court may properly consider "the

---

[5]The Tenth Circuit has recognized in United States v. Carr that, while "[t]he anticipated length and complexity of the government's case . . . should not necessarily weigh against [a defendant] since he originally had a right to a jury trial," the "disruption of [the court's] docket and consequent delays in pending cases" justified this factor weighing against the defendant in that case. United States v. Carr, 80 F.3d at 420-21.

likelihood of conviction" when assessing whether to permit withdrawal of a guilty plea.  See United States v. Carr, 80 F.3d at 421 n.5 (recognizing that the Tenth Circuit has "suggested an additional factor to consider: the likelihood of conviction" (citing United States v. Glover, 911 F.2d 419, 421 (10th Cir. 1990)).  The Court believes the consideration of likelihood of conviction is relevant here, either in the context of the two factors of whether withdrawal would substantially inconvenience the Court or waste judicial resources, or as an additional factor.  The Court does not believe, however, that the inconvenience to the Court and waste of judicial resources would be severe.  Thus, these factors are neutral in this case or weigh slightly in favor of permitting withdrawal.

The Court finds that D. Begaye had close assistance of counsel before and during his plea hearing.  D. Begaye has argued that his attorney did not provide him with some information, and that he felt pressure and coercion to enter into the guilty plea.  He has had difficulty articulating, however, what additional evidence his attorney did not consider or did not present to him that would plausibly support his theory of self defense.  Likewise, D. Begaye acknowledged that the pressure and coercion he felt was from the length of the potential sentence he faced and not from any conduct in which his attorney or the United States engaged.  The Court may also consider whether a "skilled and respected counsel" represented the defendant.  United States v. Siedlik, 231 F.3d at 750; United States v. Byrum, 567 F.3d 1255, 1265 (10th Cir. 2009).  Mr. Farkas is an experienced attorney who has considerable experience practicing in federal court.  Given that he met with D. Begaye several times to discuss the case, to present him with his options, and to provide him with a realistic assessment of his prospects at trial, the Court does not believe Mr. Farkas' representation has been deficient in any manner.  During the plea colloquy in front of Judge Scott, D. Begaye acknowledged that he was satisfied with Mr. Farkas' representation up until that point.  While D. Begaye is unhappy with his current situation and seeks withdrawal of his guilty plea, the Court cannot say his

attorney caused that situation.  "The plea of guilty is a solemn act not to be disregarded because of belated misgivings about [its] wisdom."  United States v. Morrison, 967 F.2d at 268.  Given that the facts are relatively unfavorable to D. Begaye in terms of receiving an acquittal, his attorney likely secured a favorable result for him regarding the agreed upon sentencing range.  Thus, the fifth factor weighs against allowing withdrawal.

The Court gives substantial weight to the sixth factor -- whether the plea was knowing and voluntary.  The Tenth Circuit has recognized that a defendant's guilty plea must be knowing, voluntary, and intelligent.  See United States v. Libretti, 38 F.3d 523, 529 (10th Cir. 1994).  To enter a plea that is knowing and voluntary, a defendant must have "a full understanding of what the plea connotes and of its consequence."  Boykin v. Alabama, 395 U.S. 238, 244 (1969).  A defendant must understand only the plea's "direct consequences."  United States v. Hurlich, 293 F.3d 1223, 1230 (10th Cir. 2002).  D. Begaye has not argued that he did not understand the consequences of pleading guilty.  He has conceded that "the court proceeded through an extensive plea colloquy with the defendant."  Motion at 5.  The Court has reviewed the plea colloquy in front of Judge Scott, as well as the terms of the Plea Agreement itself, and believes that D. Begaye received adequate information regarding the benefits and consequences of pleading guilty.  D. Begaye represented that he understood all of Judge Scott's warnings, that he was in fact guilty, and that he intended to plead guilty.  Judge Scott specifically walked D. Begaye through the consequences of pleading guilty and gave the applicable admonitions contained in rule 11(b) of the Federal Rules of Criminal Procedure.  D. Begaye acknowledged that he understood those benefits and consequences, and expressly waived his constitutional rights as part of entering the guilty plea.  D. Begaye may be unhappy with the length of the agreed upon sentencing range at this time, but the record does not support a finding that he entered his plea in an unknowing and involuntary manner.  D. Begaye faced a lengthy sentence

if he were to proceed to trial, and a defendant in those circumstances often has few desirable options. The Court believes he thoughtfully considered those consequences and entered into the Plea Agreement to minimize his exposure to a longer sentence.  "The plea of guilty is a solemn act not to be disregarded because of belated misgivings about [its] wisdom."  United States v. Morrison, 967 F.2d at 268.  Thus, this factor weighs against withdrawal.[6]

Only one factor weighs in favor of withdrawal, two of the factors are neutral or weigh slightly in favor of withdrawal, and the remaining factors weigh against withdrawal.  Most importantly, the key factors in this analysis, whether the defendant has asserted his innocence, whether the defendant had close assistance of counsel, and whether the defendant entered his plea in a knowing and voluntary manner, weigh against withdrawal.  The Court does not believe that D. Begaye has met his burden to show a "fair and just reason for requesting the withdrawal."  Fed. R. Crim. P. 11(d)(2)(B).  Consequently, the Court will not permit him to withdraw his guilty plea.

In sum, the alleged new evidence is either not new or not particularly compelling.  D. Begaye had everything he needed to make an informed decision at his plea hearing, and his counsel and Judge Scott appear to have been careful to make certain he understood everything about the plea. At the plea colloquy and in the Plea Agreement, D. Begaye said he understood the consequences of pleading guilty, and he appears to have pled guilty with full knowledge of the consequences.  The possibility of a slightly enhanced chance of acquittal does not, under the facts of this case, present a fair and just reason for withdrawal of the plea.  While it is true that a district court should freely

_____

[6]In comparison, in United States v. Jim, the Court permitted the defendant to withdraw his guilty plea in large part because of defects in the plea colloquy that gave the Court "doubts whether the plea was knowing and voluntary."  2011 WL 6013093, at *9-13.  The magistrate judge never mentioned the word "trial" during the plea colloquy, and the defendant stated, with some plausibility, that he did not know he was waiving his right to proceed to trial.  See United States v. Jim, 2011 WL 6013093, at *11-12.

permit withdrawal of a plea, see United States v. Garcia, 577 F.3d at 1274 ("Although a motion to withdraw a plea prior to sentencing should be freely allowed, we will not reverse unless the defendant can show that the court acted unjustly or unfairly."), a defendant is not as a matter of course entitled to withdraw a guilty plea even when he asserts a plausible defense, see United States v. Garcia, 577 F.3d at 1275 ("However, the presentation of a plausible defense does not, ipso facto, mean that the district court abuses its discretion by denying leave to withdraw a guilty plea."). Here, D. Begaye's asserted bases for his innocence are not plausible, and none of the other seven factors counsel strongly in favor of permitting withdrawal of his plea. The Court is concerned that, if it were to allow D. Begaye to withdraw his guilty plea, it would be ill-advised to do so. His trial would likely be like watching a train wreck, with no measurable benefit to D. Begaye. His admissions in the Plea Agreement may be admissible against him at trial, as he agreed to waive the evidentiary and procedural protections that would prevent the jury from seeing this evidence.[7] Furthermore, it might be that T. Begaye testifies against D. Begaye. The Court believes it is within its discretion in precluding D. Begaye from withdrawing his guilty plea. Even if some factors weigh in favor of withdrawal, factors that "speak to the potential burden on the government and the court,

---

[7]The relevant provision in the Plea Agreement is as follows:

> Except under circumstances where the Court, acting on its own, fails to accept this plea agreement, the Defendant agrees that, upon the Defendant's signing of this plea agreement, the facts that the Defendant has admitted under this plea agreement as set forth above, as well as any facts to which the Defendant admits in open court at the Defendant's plea hearing, shall be admissible against the Defendant under Federal Rule of Evidence 801(d)(2)(A) in any subsequent proceeding, including a criminal trial, and the Defendant expressly waives the Defendant's rights under Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410 with regard to the facts the Defendant admits in conjunction with his plea agreement.

Plea Agreement ¶ 10, at 5-6.

rather than the defendant's <u>reason</u> for withdrawal . . . [, these factors] cannot establish a fair and just reason for withdrawal." <u>United States v. Wright</u>, 392 F.App'x at 629 (emphasis in original)(quoting <u>United States v. Hamilton</u>, 510 F.3d 1209, 1217 (10th Cir. 2007)).   Accord <u>United States v. Hamilton</u>, 510 F.3d at 1217 ("Similarly, a court need not address the timing of the defendant's motion, the inconvenience to the court, or the waste of judicial resources unless the defendant establishes a fair and just reason for withdrawing his guilty plea.").[8]

**IT IS ORDERED** that the Defendant's Motion to Withdraw Plea of Guilty, filed August 30, 2011 (Doc. 58), is denied.

_____
UNITED STATES DISTRICT JUDGE

---

[8]When the Court decided <u>United States v. Gould</u>, it took a permissive approach to permitting the defendant to withdraw his guilty plea and also believed that the asserted basis of innocence was more plausible than the one in this case.  <u>See</u> 2006 WL 4061159, at *3.  Over time, the Court has become more hesitant to permit plea withdrawals, as it has learned that this path often produces in unfavorable results for defendants.  In <u>United States v. Jim</u>, for example, the Court voiced these reservations and applied a more cautious approach to allowing plea withdrawal, but ultimately allowed withdrawal of the plea based on serious defects in the plea colloquy:

> The Court has serious reservations about allowing Jim to withdraw his plea of guilty and to withdraw from his Plea Agreement.  The Court has not seen similar scenarios work out well for defendants; indeed, similar scenarios often end up as disastrous for defendants.  Particularly here, where Jim has made admissions at the plea colloquy that may be used against him at his trial, Jim faces poor prospects at trial, and thus may face a guidelines range of 324 to 405 months, rather than the rule 11(c)(1)(C) plea agreement's 151 to 181 months.  Nevertheless, because the plea colloquy was deficient in explaining fully to him that he was waiving his right to trial, the Court believes that it should allow him to withdraw his plea and exercise his right to trial if he so desires.

2011 WL 6013093, at *13.

*Counsel*:

Kenneth J. Gonzales
  United States Attorney
Roberto D. Ortega
  Assistant United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

       *Attorneys for the Plaintiff*

Todd E. Farkas
Jaffe Law Firm
Albuquerque, New Mexico

       *Attorney for the Defendant*