IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                                          No. CR 10-0456 JB

DARNELL BEGAY,

      Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on Defendant Darnell Begay's Sentencing Memorandum, filed January 30, 2012 (Doc. 78)("Sentencing Memorandum"). The Court held a sentencing hearing on February 13, 2012. The primary issue is whether the Court should accept the plea agreement under rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure and vary downward to sentence Defendant Darnell Begay to a sentence of 151 months. Because the Court agrees that there are mitigating circumstances which justify a variance, the Court accepts the rule 11(c)(1)(C) plea agreement and sentences D. Begay to a sentence of 151-months incarceration.

**FACTUAL BACKGROUND**

D. Begay and co-Defendant Tyrus Begaye were at a residence where they planned "to drink and watch a movie." Presentence Investigation Report ¶ 19, at 7, disclosed June 7, 2011 ("PSR"). "They built a fire and began drinking." PSR ¶ 19, at 7. T. Begaye "yelled [to D. Begay] that someone was outside yelling at him." PSR ¶ 19, at 7. D. Begay "exited the residence and initially did not hear anything, and subsequently heard someone yell 'f_ck you.'" PSR ¶ 19, at 7. D. Begay "could not see who it was and told them to leave." PSR ¶ 19, at 7. T. Begaye eventually chased down the individual outside, Payton Hogue, and began to hit Hogue. See PSR ¶¶ 19-20, at 7. D.

Begay held down Hogue while T. Begaye hit Hogue. See PSR ¶ 20, at 7. D. Begay "reported [that] Mr. Hogue had a white face and dark eyes, and he thought Mr. Hogue may have been a shape shifter." PSR ¶ 20, at 7. D.

D. Begay "advised he had to pull Tyrus Begaye off Mr. Hogue at least three times, and Tyrus Begaye had kicked Mr. Hogue a couple of times in the head." PSR ¶ 20, at 7. D. Begay "reported he hit Mr. Hogue with his fists a couple of times, and after they were done beating him, he and Tyrus Begaye walked back to Tyrus Begaye's vehicle." PSR ¶ 20, at 7. "They observed Mr. Hogue sitting up, and he was coughing up blood." PSR ¶ 20, at 7. "They told Mr. Hogue to leave, and then they left." PSR ¶ 20, at 7. Hogue later died and was found laying in the approximate location where D. Begay and T. Begaye had left him. See PSR ¶ 9, at 4. Following the event, D. Begay and T. Begaye "visited a Navajo medicine man who prayed for them and instructed them to turn themselves in." PSR ¶ 18, at 6. A relative told D. Begay and T. Begaye "to destroy the clothing they wore because it had the blood of a skin walker on them." PSR ¶ 21, at 7.

## PROCEDURAL BACKGROUND

D. Begay, pursuant to a Plea Agreement, filed April 7, 2011 (Doc. 46), pled guilty to the Indictment, filed February 23, 2010 (Doc. 15), charging him with a violation of 18 U.S.C. §§ 2, 1111, and 1153, that being second-degree murder, and aiding and abetting. The Plea Agreement stipulates to a sentencing range of "151 to 188 months." Plea Agreement ¶ 5, at 2-3. D. Begay agreed to a sentence in this range, and further stipulated that he would not seek a downward departure or variance below this range. See Plea Agreement ¶ 10, at 5. D. Begay agreed to waive his right to appeal his "conviction(s) and any sentence . . . within the statutory maximum authorized by law and imposed in conformity with this plea agreement." Plea Agreement ¶ 13, at 7.

The United States Probation Office ("USPO") disclosed a PSR for D. Begay on June 7, 2011.

In the PSR, the USPO calculates D. Begay's total offense level to be 35.  See PSR ¶ 43, at 11.  The PSR applies a base offense level of 38 pursuant to U.S.S.G. § 2A1.2(a).  See PSR ¶ 36, at 11.  The PSR includes a 3-level reduction under U.S.S.G. § 3E1.1 based on D. Begay's acceptance of responsibility.  See PSR ¶ 42, at 11.  The PSR lists his criminal history category as I, based on 1 criminal history point.  See PSR ¶ 50, at 14.  The PSR calculates that an offense level of 35 and a criminal history category of I results in a guideline imprisonment range of 168 to 210 months.  See PSR ¶ 90, at 21.  On July 7, 2011, the USPO disclosed an Addendum to the Presentence Report to include several "training certificates" D. Begay has received for matters such as cardio-pulmonary resuscitation training and first-aid training.  Addendum to PSR at 1.

On August 30, 2011, D. Begay filed his Motion to Withdraw Plea of Guilty.  See Doc. 58.  He asked the Court to permit him to withdraw his guilty plea.  See Motion to Withdraw Plea of Guilty at 1.  On January 3, 2012, the Court denied his request to withdraw his guilty plea.  See Memorandum Opinion and Order at 1 (Doc. 75).

On January 30, 2012, D. Begay filed his Sentencing Memorandum.  See Doc. 78.  He asks that "the Court sentence him to the low end of the Guidelines range, as set forth in the Plea Agreement, at 151 months."  Sentencing Memorandum at 1.  He contends that he acted as "the sole provider" for three daughters until his arrest for this offense.  Sentencing Memorandum at 1.  He asserts that, although he has had some encounters with the law, he has largely lived life as "a responsible citizen and parent."  Sentencing Memorandum at 2-3 (emphasis omitted).  He contends that, given the strange circumstances surrounding the event, he did not provoke the altercation with Hogue.  See Sentencing Memorandum at 3-4.  He asks the Court to consider that he has never committed a similar offense in his life.  See Sentencing Memorandum at 4-5.

On February 7, 2012, the United States filed its Response to Sentencing Memorandum.

-3-

See Doc. 81 ("Response"). It also requests that the Court "impose a sentence of 151 months imprisonment." Response at 1. The United States argues that the agreed-upon sentence "is predicated on evidentiary issues that would have arisen at trial, including the lack of eyewitnesses and limited forensic evidence." Response at 6. It also notes that D. Begay and T. Begaye "turned themselves in and gave a post-arrest statement shortly after the crime which allowed investigators to solve the crime quickly." Response at 6.

At the sentencing hearing on February 13, 2012, the parties agreed to the Court reducing D. Begay's offense level three levels for acceptance of responsibility. See Transcript of Hearing at 2:22-3:7 (taken February 13, 2012)(Court, Ortega, Farkas)("Tr.").[1] D. Begay emphasized that he has no felony convictions. See Tr. at 4:16-23 (Farkas). He noted that he has lived a settled lifestyle now that he has children. See Tr. at 5:1-9 (Farkas). The United States asserted that D. Begay has come to accept responsibility for the offense he committed. See Tr. at 11:6-14 (Ortega). The United reiterated that there are no eyewitnesses to the crime and limited forensic evidence. See Tr. at 12:4-15 (Ortega). The United States noted that there appear to be no material differences between D. Begay and T. Begaye's liability for the underlying criminal conduct, but represented that T. Begaye appears to have attacked Hogue before D. Begay become involved. See Tr. at 13:20-14:4 (Court, Ortega).

## **ANALYSIS**

There being no disputes about the PSR's factual findings, the Court adopts them as its own. There also being no disputes about the PSR's guideline calculation, the Court will adopt that as its own. A criminal offense level of 35 and a criminal history category of I results in a guideline

---

[1] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

imprisonment range of 168 to 210 months. The parties have stipulated to a sentencing range of 151 to 188 months -- the equivalent of a 1-level reduction to D. Begay's offense level. See Plea Agreement ¶ 5, at 2-3.

The Court notes that D. Begay killed Hogue by striking him with his hands. The Court has carefully considered the parties' arguments and the circumstances of this case. The Court has considered the guideline range for the applicable category of offense committed by the applicable category of defendant. The Court believes that the punishment that the guidelines set forth is not appropriate for D. Begay's offense. The Court agrees with the parties that a sentence of 151 months is sufficient to reflect the seriousness of this offense. This variance is the equivalent to a reduction of 1 offense level. The United States Attorney's Office in this district has for years given, under its fast-track program, a 1-level reduction for waiver of appellate rights. See United States v. Begaye, No. 10-0456, 2011 WL 7036078, at *4 (Dec. 29, 2011)(Browning, J.)("The Court notes that it is also customary in this District for the United States Attorney to agree to a 1-level reduction in a defendant's offense level based on the waiver of a defendant's rights to appellate and post-conviction relief."). D. Begay has agreed to waive his appellate rights. Plea Agreement ¶ 13, at 7. This reduction gives some parity with those that come into this country illegally or bring in drugs, and were eligible for the United States Attorney's Office's fast-track program before the Attorney General recently created a national fast-track program.[2] Moreover, the United States has

---

[2]"To expedite the handling of large volumes of cases involving persons accused of immigration offenses, certain judicial districts employ fast-track programs." United States v. Martinez-Trujillo, 468 F.3d 1266, 1268 (10th Cir. 2006), overruled by United States v. Lopez-Macias, 661 F.3d 485 (10th Cir. 2011). "In section 401(m)(2)(B) of the PROTECT Act of 2003, Pub.L. No. 109–21, § 401(m)(2)(B), 117 Stat. 650, 675, Congress approved early disposition or fast-track programs if certain conditions are met." United States v. Rocha-Nunez, No. 11-2848, 2012 WL 1372288, at *5 (D.N.M. Apr. 16, 2012)(Browning, J.).

pointed to some weaknesses in its case if the case were to proceed to trial, including the lack of any witnesses to the crime other than D. Begay and T. Begaye, and the lack of any significant forensic

---

> A provision of the PROTECT Act directed the United States Sentencing Commission to "promulgate . . . a policy statement authorizing a downward departure of not more than 4 levels if the Government files a motion for such departure pursuant to an early disposition program authorized by the Attorney General and the United States Attorney." Pub. L. No. 108-21, § 401(m), 117 Stat. at 675. The Sentencing Commission accordingly added a new Guidelines section, effective October 27, 2003, authorizing such four-level departures. See U.S.S.G. § 5K3.1, p.s.

United States v. Morales-Chaires, 430 F.3d 1124, 1127 (10th Cir. 2005)

Originally, as the United States Court of Appeals for the Tenth Circuit has stated: "The decision to adopt the [fast-track program] in a district is made by the United States Attorney General and the United States Attorney for the district." United States v. Diaz-Devia, 425 F.App'x 764, 767 (10th Cir. 2011)(unpublished)(alterations in original). "In jurisdictions where fast-track programs have been authorized by the Attorney General, defendants must 'agree to the factual basis [of the criminal charge] and waive the rights to file pretrial motions, to appeal, and to seek collateral relief (except for ineffective assistance of counsel).'" United States v. Morales-Chaires, 430 F.3d at 1127 (alterations in original). The benefit to defendants under these programs is that they receive a shorter sentence, which is "accomplished either by charge-bargaining or by [the prosecutor] promising to recommend a downward departure at sentencing." United States v. Morales-Chaires, 430 F.3d at 1127. New Mexico is one of the States that has its own fast-track program. See United States v. Sanchez-Juarez, 240 F.App'x 259, 262 n.2 (10th Cir. 2007)("In any event, Sanchez-Juarez was prosecuted in the United States District court for the District of New Mexico, a jurisdiction that has a fast-track program in place."). New Mexico also has a fast-track program for certain drug cases. See R. Norris, Fast-Track Disparities in the Post-*Booker* World: Re-Examining Illegal Reentry Sentencing Policies, 84 Wash. U. L. Rev. 747, 757 n.67 (2006)(noting that "drug backpacking cases in New Mexico" are covered under a fast-track program).

The United States Attorney General recently adopted a policy of implementing the fast-track program nationally for illegal re-entry cases. See Memorandum from James M. Cole, Deputy Attorney General, to the United States Attorneys at 2 (Jan. 31, 2012), available at http://www.justice.gov/dag/fast-track-program.pdf [hereinafter Memorandum] ("After consultation with the United States Attorneys in both affected and non-affected districts, the Department is revising its fast-track policy and establishing uniform, baseline eligibility requirements for any defendant who qualifies for fast-track treatment, regardless of where that defendant is prosecuted."). The Attorney General stated that it would require certain "baseline eligibility requirements" for a particular district to maintain such a fast-track program, including: (i) having the United States Attorney in each district retain discretion to limit a defendant's participation in the program in light of various factors, such as criminal history and number of illegal re-entries; (ii) requiring a written plea agreement with certain provisions, such as an agreement to waive appellate rights; and (iii) setting national standards regarding what levels of downward departures are permitted under the program. Memorandum at 2-4.

evidence. The Court has in the past held that weaknesses in the United States' case may be grounds for a variance, because in some cases, such as this one, a sentence of some length is a more just punishment than no sentence at all. See United States v. Summers, 506 F.Supp.2d 686, 698-99 (D.N.M. 2007)(Browning, J.)("The Court can, under 18 U.S.C. § 3553(a), take into account the problems with the United States' case."); United States v. Jiang, 376 F.Supp.2d 1153, 1157-58 (D.N.M. 2005)(Browning, J.)(granting a variance after examining the potential benefits to the United States and the public of not going to trial); United States v. Stone, 374 F.Supp.2d 983, 990 (D.N.M. 2005)(Browning, J.)(granting a variance after considering the United States' prospects at trial).

It is also worth noting that D. Begay does not appear to have been the initial aggressor in the altercation, with Hogue arriving on the property unannounced and T. Begaye striking the first blow. Many of the reasons given in support of the Court's sentence for T. Begaye of 151-months imprisonment are equally applicable here, particularly in light of Hogue's unannounced appearance on the property, D. Begay and T. Begaye's Native American beliefs, and D. Begay and T. Begaye acting in an otherwise lawful manner before the altercation:

> While Begaye engaged in a violent crime resulting in someone's else's death, the victim appeared in an unusual manner on Begaye's property, which is on the outskirts of the Navajo reservation, and does not appear to have explained his reason for being there or identified himself. Given the isolated nature of Begaye's residence, those facts indicate that Begaye did not have a particularly culpable mental state in committing this crime and that the victim was to some extent responsible for instigating the incident. Begaye's Native American beliefs may have made him unusually fearful under the circumstances as well. While Begaye was intoxicated, he was lawfully on his own property and was not violating any laws in consuming alcohol.

United States v. Begaye, 2011 WL 7036078, at *4. "In some Native American legends, a skin-walker is a person with the supernatural ability to turn into any animal he or she desires . . . ." Skin-

Walker, Wikipedia, http://en.wikipedia.org/wiki/Skin-walker.

> Some Navajo also believe that skinwalkers have the ability to steal the "skin" or body of a person. The Navajo believe that if you lock eyes with a skinwalker, they can absorb themselves into your body. It is also said that skinwalkers avoid the light and that their eyes glow like an animal's when in human form, and when in animal form their eyes do not glow as an animal's would.
>
> . . . .
>
> Often, Navajos will tell of their encounter with a skinwalker, though there is a lot of hesitancy to reveal the story to non-Navajos . . . . Sometimes the skinwalker will try to break into the house and attack the people inside, and will often bang on the walls of the house, knock on the windows, and climb onto the roofs. . . .
>
> Legend has it skinwalkers can have the power to read human thoughts. They also possess the ability to make any human or animal noise they choose. A skinwalker may use the voice of a relative or the cry of an infant to lure victims out of the safety of their homes.

Skin-Walker, supra. D. Begay also admitted to the crime by turning himself in to the police, making him appear less culpable than a defendant who sought to hide his or her crime.

The Court has considered the guidelines, but, in arriving at its sentence, has taken into account not only the guidelines but other sentencing goals. The Court believes that a sentence of 151 months is appropriate to reflect the seriousness of D. Begay's crime. This sentence adequately reflects the seriousness of the offense, promotes respect for the law, provides just punishment, affords adequate deterrence, protects the public, avoids unwarranted sentencing disparities among similarly situated defendants, and otherwise fully reflects each of the factors embodied in 18 U.S.C. § 3553(a). Given that the Court is varying only 1 offense level and because D. Begay does not appear to have been the initial aggressor, the Court believes that the sentence reflects the seriousness of the offense, promotes respect for the law, and provides just punishment. D. Begay is receiving a sentence of more than twelve years even though he has only 1 criminal history point. Consequently, the Court believes that the sentence affords adequate deterrence both to D. Begay

specifically and the public generally. Given that D. Begay does not appear to have initiated the altercation and will be in his late forties -- an age where his rate of recidivism will likely decrease -- when he completes his sentence, the Court believes that the sentence protects the public. Because the Court has sentenced both D. Begay and T. Begaye to the same sentence of 151-months imprisonment, see Amended Judgment at 2, filed January 9, 2012 (Doc. 77), the Court concludes that the sentence avoids unwarranted sentencing disparities among similarly situated defendants. Imposing an additional 17 months of incarceration will not more fully reflect the factors embodied in 18 U.S.C. § 3553(a). While the Court's task, as a district court, is not to arrive at a reasonable sentence -- it is to come up with one that reflects the factors in 18 U.S.C. § 3553(a), see United States v. Conlan, 500 F.3d 1167, 1169 (10th Cir. 2007)("[A] district court's job is not to impose a reasonable sentence. Rather, a district court's mandate is to impose a sentence sufficient, but not greater than necessary, to comply with the purposes of section 3553(a)(2)." (citation omitted)) -- the Court believes this sentence is reasonable. And perhaps most important in this calculation, the Court believes that this sentence is sufficient without being greater than necessary to comply with the purposes of punishment Congress set forth in the Sentencing Reform Act of 1984, Pub. L. No. 98-473, 98 Stat. 1987 (codified as amended in scattered sections of 18 U.S.C.). The Court sentences D. Begay to 151-months imprisonment.

**IT IS ORDERED** that the requests for a downward variance to a sentence of 151-months imprisonment in Defendant Darnell Begay's Sentencing Memorandum, filed January 30, 2012 (Doc. 78), is granted.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Kenneth J. Gonzales
  United States Attorney
Roberto D. Ortega
  Assistant United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

Todd E. Farkas
The Jaffe Law Firm
Albuquerque, New Mexico

    *Attorney for the Defendant*